UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF CROSBY MARINE TRANSPORTATION, L.L.C. AND CROSBY TUGS, L.L.C. AS THE OWNERS AND OWNERS PRO HOC VICE OF THE *M/V DELTA DUCK* AND HER CARGO, ENGINES, TACKLE, GEAR, APPURTENANCES, ETC. *IN REM*; AND BERTUCCI CONTRACTING COMPANY, L.L.C. AS THE OWNERS AND OPERATORS PRO HOC VICE OF THE BARGE BBL 708 AND HER CARGO, ENGINES, TACKLE, GEAR, APPURTENANCES, ETC. *IN REM* PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 17-14023 C/W 18-04136<br><br>SECTION "M" (4)<br><br>JUDGE BARRY W. ASHE<br><br>MAGISTRATE KAREN W. ROBY |
| ALL CASES | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPPOSITION TO MOTION FOR LEAVE TO AMEND PLEADINGS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAY IT PLEASE THE COURT,

Angela Huggins opposes Crosby's and Underwriters' Motion for Leave to Amend their answer because Crosby and Underwriters cannot demonstrate "good cause" for allowing the amended answer, and because the Government Contractor Immunity defense, sought to be plead in the amended answer is a "futile " defense given the uncontested facts of this case.

I.  **CROSBY AND UNDERWRITERS CAN NOT SHOW GOOD CAUSE FOR FAILURE TO MEET THE SCHEDULING ORDER DEADLINE**

The Fifth Circuit has clarified when, as here, a scheduling order has been issued, by the district court, Rule 16(b) governs amendments to pleadings. *Royal Ins. Co. of America v. Schubert Marine Sales,* 02-0916 2003 WL 21664701(E.D. La 2003)  Rule 16(b) limits changes in the deadlines set by a scheduling order "only for good cause and with the judge's

1

consent". Fed. R. Civ. P. 16(b)(4). **To meet the good cause standard, the party must show that, despite its diligence, it could not have reasonably met the scheduling order deadline.** *Homelight In the Gardens, L.L.C. v Landry* 16-cv-15549, (Doc. 76), citing *S&W Enterprises L.L.C. v. Southtrust Bank of Alabama* 315 F.3d. 533(5th Cir. 2003). If the movant can show "good cause" the Court will then apply the liberal standards of Rule 15(a). *Id.* at 536.

Crosby and Underwriters rely on prior jurisprudence which found "good cause" to exist to allow a defendant to amend its answer after the Court's deadline when defendant recently obtained information to substantively support a new affirmative defense. Crosby and Underwriters allege that "good cause" exists because they did not receive a response to their *Touhy* request until July 2020. Defendants argument is erroneous because the United States Army Corps of Engineers' (USACE) *Touhy* response provided Crosby and Underwriters with no "new" information they did not possess, or could not have acquired with due diligence, prior to receiving the *Touhy* response.

At the outset, it should be noted that this litigation was initiated by Crosby when they filed a Limitation of Liability Claim. Underwriters were added as party defendants in claimant's answer and claim. Originally this matter was set for a two-week jury trial on March 23, 2020; however on motion of Crosby, the matter was stayed due to unresolved criminal proceedings pending against Chad Williams, a co-defendant in the claim asserted by Angela Huggins. The court held a scheduling conference on February 28, 2020 at which time a new scheduling order was issued. Neither Underwriters nor Crosby mentioned or discussed their pending *Touhy* request and the need for additional time to amend their answer during the scheduling conference.

Underwriters assert, "It was not until the corporate deposition of Crosby Tugs, taken on September 5, 2019 that Underwriters realized that Crosby and BIS were working directly for the USACE and that BIS was barely, if at all, involved in the project itself". This allegation is unsupported by the fact that the Corps project required Crosby to obtain specific insurance in order to work on the USACE project. When Underwriters agreed to write the insurance policies, they knew, or should have known, they were insuring a Corps project. Additionally, the fact that BIS was working on a Corps project was specifically stated in the July 15, 2017 contract between Crosby Dredging and BIS and the July 15, 2017 contract between Bertucci and BSI. (Said contracts were produced to all parties on April 16, 2018 pursuant to a subpoena issued by counsel for co-defendant Chad Williams.) Lastly, Underwriters could have easily obtained this "unknown" information by simplicity asking Crosby for any information they required. (Every insurance contract contains provisions for the insured to cooperate with the insurer in defending against covered claims)

Further evidence that Underwrites had the requisite information to assert the Government Contractor Immunity Defense prior to receiving a response to their *Touhy* request is the fact that counsel for Underwriters drafted the affidavit forwarded to the USACE on November 18, 2019. The fact that Underwriters drafted the affidavit, which factually supports the Government Contractor Immunity Defense, clearly establishes that Underwriters knew the basic facts to assert the defense prior to receiving a response to their *Touhy* request. Prior to filing their Limitation of Liability Claim, and before Underwriters filed their answer to the claims asserted in this litigation, Crosby knew of each of the factual allegations contained in Mr. Hinkamp's affidavit which forms the basis of the Immunity Defense. This information was equally accessible to Underwriters if they simplicity would have asked Crosby.

Since Crosby and Underwriters can not show that, despite their due diligence, they were unable to meet the scheduling order deadline, Crosby and Underwriters can not establish "good cause" for extending the deadline for filing an amended answer.

## II. THE GOVERNMENT CONTRACT IMMUNITY DEFENSE IS FUTILE GIVEN THE UNCONTESTED FACTS OF THIS CASE

The uncontested testimony of Captain Carter, Mate Hebert, and Crosby representative Wade Savoy, unequivocally establish that from the time of the inception of the contract until after the November 19, 2019 accident, the three barges working on the project were operated without navigational lights; a clear violation of Coast Guard regulations.[1] Equally uncontested, is the fact that Wade Savoy testified that the Coast Guard Regulations and the Inland Rules of Navigation were part of the plans and specifications of the USACE project.[2]

The Inland Rules of Navigation Section 162.75 (b) (3)(i) states:

(3) anchoring or mooring:

> (i) Vessels or tows shall not anchor or moor in any of the land cuts or other narrow parts of the waterway except in an emergency, or with permission of the district commander. Whenever it becomes necessary for a vessel or tow to stop in any such portions of the waterway, it shall be securely fastened to one bank and as close to the bank as possible. This shall be done at such place and under such conditions as will not obstruct or prevent the passage of other vessels or tow. Stoppages shall be only for such periods as maybe necessary.

Mr. Savoie, the Crosby corporate representative, testified that captains operating tows on the USACE project were given the discretion to park their barges against the bank of Bayou Segnette **for any reason**.[3] On the night in question, the Delta Duck and its tow were moored against the westbank side of Bayou Segnette. There was no emergency and neither captain

---

[1] Depo. Of Chris Carter Exhibit A pp. 14-16; Dereck Hebert Exhibit B pp. 63-65; Crosby Tugs 30(b)(6) Exhibit C pp. 48-52, 202-204
[2] Depo. Of Crosby Tugs 30(b)(6) Exhibit C pp. 43-44
[3] Depo of Crosby Tugs Exhibit C pp. 66-68

Carter nor mate Hebert received permission from the district Commander to moor their tow in Bayou Segnette.  Absent an emergency, or permission from the district Commander, mooring the tow in the narrow part of Bayou Segnette is a violation of Section 162.75 (b) (3) (i) of the Inland Rules of Navigation.   The Inland Rules of Navigation were incorporated as plans and specifications of the USACE  project.[4]  Captain Carter's and Mate Hebert's violation of the Coast Guard Regulations and their violation of the Inland Rules of Navigation defeat Crosby and Underwriters' claim for Government Contractor Immunity.[5]

     The Government Contract Immunity defense, sought by Crosby and Underwriters, was discussed by the Supreme Court in *Boyle v. United Technologies Corp.,* 487U.S. 500; 108 S. Ct. 2510 (1988).  It is founded on the discretionary function exception of the Federal Torts Claim Act.   Following the *Boyle* decision, Court's apply a two part test to determine whether the contractor's actions qualify as immune under the discretionary function exception. *Gibson v. U.S.* 809 F.3d. 807 (5th Cir. 2016).  First, the court assess whether the challenged conduct was *"*discretionary in nature, an act that involves judgment or choice".  If the court finds that the conduct qualifies as discretionary, then it considers whether the actions taken are susceptible to public policy analysis. *Gibson, supra.*  **The discretionary function exception does not apply if the challenged action violates a specific federal statute , regulation, or policy**. *Gibson, supra.*

     In the instant case,  it is uncontested that the barges used on the USACE project were operated without navigation lights in violation of Coast Guard Regulations.   Additionally, the challenged conduct of mooring a tow in the narrow part of Bayou Segnette, absent an emergency

---

[4]. Depo. Of Crosby Tugs Exhibit C pp. 43-44

[5] The sworn testimony of Captain Carter, Mate Hebert, and Wade Savoy is based on their personal observations and actions taken by the deponents.  Their testimony contradicts Stephen Hinkamp's affidavit in so far as the affidavit states that Crosby Tugs was performing operations on November 19, 2017, in accordance with plans and specifications approved by USACE.  The affidavit states that Mr. Hinkamp statement is based on affiant's personal knowledge but fails to state how he acquired that knowledge

or permission from the district Commander, violates Section 162.75(b)(3)(i) of the Inland Rules of Navigation.  Since Crosby's conduct violated specific Federal Regulations, Crosby and Underwriters can not prevail on their Government Contract Immunity Defense, rendering their amended answer "futile".

When denying a motion to amend, the court must have "substantial reason" considering such factors as … futility of an amendment.  *Marucci Sports LLC v Nat'l Colligate Athletic Ass'n*, 751 F.3$^d$ 368 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 944).  An amendment is deemed to be futile if it would be dismissed under a Rule 12(b) 6 motion *id*. (Citing Briggs v Miss., 331 F.3d 499)(5th Cir. 2003)   Similarly, in the instant case, Crosby and Underwriter's amendment seeking to assert the Government Contractor Immunity Defense is "futile" because the defense is inapplicable where the challenged actions violate a specific federal regulation.

III.     **CONCLUSION**

Underwriters and Crosby cannot demonstrate "good cause" for failing to file their immunity defense within the time period specified in the Court's Scheduling order.  The information needed to "realize that Crosby and BIS were working directly for the USACE and that BIS was barely, if at all, involved in the project" was readily available to Underwriters if they exercised "due diligence" in their investigation of these claims.  Since Underwriters and Crosby cannot demonstrate to the court that had they exercised due diligence in their investigation of the case they would not have been able to meet the deadlines in the scheduling order, their request for leave to file an amended answer should be denied.  Additionally, and perhaps more importantly, the challenged conduct of Crosby giving rise to claimant's personal injury claims involves violations of specific Federal Regulations which defeat the immunity defense.  Since Underwriters and Crosby can not prevail on the Government Contract Immunity

Defense, their amended answer is "futile" authorizing this court to deny their request to file the amended answer.

                                                Respectfully submitted,
                                                FOLEY, LAMY & JEFFERSON

                                                s/Timothy K. Lamy
                                                TIMOTHY K. LAMY, 17015
                                                228 St. Charles Avenue, Suite 1110
                                                New Orleans, Louisiana 70130
                                                (504) 586-9395
                                                (504) 586-9410 - fax
                                                Tlamy@foleylamyjefferson.com
                                                ***Attorney for Angela Huggins***

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ***CERTIFICATE OF SERVICE***

**I hereby certify that on July 28, 2020, a copy of the above and foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.**

                                                s/Timothy K. Lamy
                                                TIMOTHY K. LAMY