UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF CROSBY MARINE TRANSPORTATION, L.L.C. AND CROSBY TUGS, L.L.C., AS THE OWNERS AND OWNERS *PRO HAC VICE* OF THE M/V DELTA DUCK AND HER CARGO, ENGINES, TACKLE, GEAR, APPURTENANCES, ETC., *IN REM*; AND BERTUCCI CONTRACTING COMPANY. LLC AS THE OWNERS AND OWNERS *PRO HAC VICE* OF THE BARGE BBL 708 AND HER CARGO, ENGINES, TACKLE, GEAR, APPURTENANCES, ETC. *IN REM* PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | DOCKET NO.: 17-cv-14023 C/W 18-4136 SECTION "M" (4) |

**MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO FILE PROPOSED AMENDED ANSWER AND AFFIRMATIVE DEFENSE**

**NOW INTO COURT**, through undersigned counsel, come Claimants, Kathy Randle, the mother of decedent, Samantha Randle, and Anna Clark (hereinafter "Randle" and "Clark"), who respectfully oppose the very late and misguided efforts of the insurers of the Crosby interests, joined by the Crosby interests (hereinafter Crosby insurers), to amend their Answers to assert a defense that was available to them from the time the Crosby interests initiated this litigation, almost three (3) years ago.

**GOOD CAUSE DOES NOT EXIST TO ALLOW THIS PROPOSED AMENDMENT 13 MONTHS AFTER THE DEADLINE SET FORTH ION THE SCHEDULING ORDER**

The thorough analysis of Your Honor in *Homelight In the Gardens, LLC et al v. Leigh Landry*, 16- 15549, (Doc. 76) examines and analyzes the standards of whether an amended Answer

1

such as the one proposed herein should be granted.[1] As in *Homelight*, the party wanted to file the proposed amended Answer after the cutoff date.  In this matter, Crosby insurers waited 13 months after the court imposed deadline.  The excuse offered by Crosby insurers is transparent and disingenuous.  They say "[i]t was not until the corporate deposition of Crosby Tugs, LLC taken on September 5, 2019 the Underwriters realized that Crosby and BIS were working directly for the USACE and that BIS was barely, if at all, involved in the project."[2]  Interestingly, the corporate deposition of Crosby Tugs, which supposedly enlightened Crosby insurers to now seek to file the proposed Amended Answer, clearly says Crosby Tugs did not have a contract with anyone for this project.  Its designated corporate representative, Wade Savoy, its Corporate Director, QHSE, made this admission.[3]  Crosby Tugs also testified that the only part of the USACE Safety Manual (EM385-1-1) that applied to it for this project was the requirement to comply with USCG regulations.[4]  Additionally, the subcontract between BIS and Crosby clearly identifies the USACE as the "OWNER" of this project.[5]

If the corporate deposition of Crosby really was the first time Crosby insurers knew anything about the contractual relationship, Crosby insurers do not offer any support whatsoever for this statement.  It is noteworthy that **ONLY** Crosby's insurers make this statement, not the Crosby interests.  In other words, the Crosby interests knew its role, the role of BIS and the role of the USACE and the roles of all the participants in this project.  This alone belies the claims of Crosby/insurers.  If this newly thought of "defense" was a serious consideration, one must question

---

[1] The court is also respectfully referred to *Jackson v. Avondale Industries, et al* 2020 WL 3510724 and *Hercules Incorporated v. United States* 116 S. Ct 981, 134 L. Ed. 2d 47, 64 USLW 4117, 40 Cont. Cas. Fed. (CCH) p 76,894 which are pertinent to the current issue.
[2] Movers Memorandum in Support of their motion, (Rec. doc 268-3) Page 3, last paragraph.
[3] Please see the corporate deposition of Crosby Tugs, attached as Exhibit "A", page 37.
[4] Please see Exhibit "A", page 42.
[5] Please see Exhibit "B" and the discussion below about this issue.

why Crosby insurers/underwriters did not explore this until now, almost three (3) years after Crosby filed this Exoneration/Limitation action?[6]

Additionally, *if* it is true that the September 5, 2019 deposition of Crosby was the first notice for Crosby and its insurers/underwriters, why did it wait two and a half (2 ½) months after the deadline to correspond with the USACE and then nine more months after that to make the current filing?[7]  Certainly they knew the pleading deadline had passed so common sense would dictate filing the current motion as soon as possible or file a Motion to Extend the deadline. Furthermore, Crosby insurers could have asked all the questions it chose to ask at the corporate deposition of Crosby or even depose the USACE.

It is convenient for movers to blame their grossly dilatory conduct on Covid-19 but is it true?  Other than a slow response from the USACE, which is typical even when the country is not in a pandemic, what support has Crosby insurers presented?  Did Crosby insurers just sit in quarantine waiting for the response from the USACE?  Did the parties stop working during the months of this pandemic?  Certainly, the insurers/underwriters could have gotten all the information it needed from Crosby itself as well as from BIS both before and after it was dismissed. Crosby Dredging had a written contract with BIS.

Movers completely fail to directly address the contracts in this matter.  Those contracts were produced very early in this litigation.  They were available to Crosby insurers from the outset and it would be naïve to believe Crosby and its insurers did not have copies its own contracts.[8]

---

[6] Crosby's insurers/underwriters were present for every deposition taken in this matter, so any claim of surprise is simply inappropriate.
[7] Please see movers Exhibit 1 dated November 18, 2019
[8] A copy of the pertinent section of the voluminous contract between USACE and BIS is attached as Exhibit "B.

3

In furtherance of its efforts to avoid discussing the contracts already in their possession, what they provide, etc. Crosby underwriters argues that it went to the "… arduous process of sending the USACE a *Touhy* request to determine if Crosby and Underwriters had any prospects of succeeding on the defense."[9]  Movers refer to its Exhibit 2.  Upon close review of that letter, it is obvious that, once again, it was only the insurers/underwriters making that inquiry.  This demonstrates, once again, that Crosby was privy to all of this documentation and information.  The only logical inferences to be drawn from all of this is that underwriters never sought the information from Cosby or had the information and did not think it was relevant or simply did not think of this new inapplicable defense.

## THE USACE CONTRACT WITH BIS

The contract is extremely lengthy.  The pertinent part that Crosby insurers have ignored is entitled "SECTION 01100-GENERAL PROVISIONS).[10]  One part of this document that is applicable in this instance for the current motion is item 30, entitled "Signal Lights" (page 01100-22). Once again, vessels are requir4d ["**shall**'] to comply with USCG regulations regarding lights.

The broad concept behind the defense that Crosby insurers now want to assert is for the government to avoid  incurring any additional expenses for damages caused by the government requirements that result in injuries. Clearly that is not applicable in this matter.  Furthermore, BIS clearly understood its obligations to the USACE and protected itself and the USACE. The subcontract between BIS and Crosby Dredging has insurance requirements.[11]

---

[9] Movers Memorandum in Support of their motion, (Rec. doc 268-3) page 4 first new paragraph.  Movers apparently define writing a letter as an arduous task.
[10] Attached as Exhibit "B" is a copy of the USACE contract with BIS, Table of Contents and Section 01100-Genral Provisions.  This section alone is 23 pages long.  If the court would like a complete copy of the several hundred-page long document, the undersigned will gladly produce it immediately.
[11] Attached hereto as Exhibit "C" is the subcontract between BIS and Crosby Dredging.

4

**INSURANCE**

Article 7 entitled Insurance of the BIS subcontract with Crosby Dredging mandates that Crosby carry certain types of insurance. Subsection B.2 of Article 7 requires Comprehensive General Liability insurance. It sets for the primary and umbrella/excess limits. B.2 requires that BIS and the "Owner" (defined in Article 1 as the "U.S. Army Corps of Engineers (USACE) as additional insureds to the extent of liabilities assumed by "Subcontractor" (defined in Article 1 as Crosby Dredging). Article 6.B requires Crosby to defend and indemnify the USACE arising directly out of Crosby's negligence, or willful, wanton, or reckless conduct resulting in death or bodily injury.

The testimony of Chris Carter, one (1) of the Crosby Captains assigned to the M/V DELTA DUCK, at the time of the casualty involved in this litigation, testified that the Crosby captains do not use their running lights.[12] Captain Carter acknowledged that USCG to not obstruct a navigable waterway.[13] He excused this wanton and dangerous conduct because of the condition of the barges.[14]

Division 01-General Requirements, Section 01 33 00 of the contract between the USACE and BIS provides on page 2 that BIS was required to submit its "Certificates of insurance".[15] Insurance costs are understo0od and the USACE to have its contractors provide insurance. It is incorporated in the bidding process. For instance, the "Summary Of Costs" required to be submitted to the government calls for the inclusion of the costs of insurance.[16]

---

[12] Please see the deposition of Captain Carter, attached as Exhibit "D", page 243, line 23 through page 244, line 7.
[13] Please see Exhibit "D", page 241, line 3 through line 10.
[14] Please see Exhibit "D", page 243 through page 244, line 7.
[15] Please see Exhibit "E".
[16] Please see Exhibit "F" (page embossed ENG 4267) which is part of the BIS contractual documents with the USACE.

With all of the foregoing in mind, the negligent, wanton, and intentional conduct of Crosby clearly demonstrates that the government cannot possibly be exposed to any excess costs. Not only has Crosby been negligent it has been willful and wanton and intentionally violated the only rules imposed on it, *i.e.* compliance with USCG regulations. Ergo, the defense is inapplicable.

## **THE REQUIREMENTS OF THE PROPOSED DEFENSE**

As your Honor so succinctly said in *Homelight*, the first thing for the court to examine is the movers' explanation of why they are so untimely in seeking to add the defense at such a late date. This has been addressed above and it is clear the excuses ["explanation"] offered by Crosby insurers are illogical and unpersuasive.

Second, the court needs to consider the importance of the amendment. The only explanation offered by the movers is that the defense might give them a hope of being immunized from liability for their tortious conduct and regulatory violations.

Even the movers admit they must provide three (3) elements:

1) The government approved precise specifications. The regulations "approved" by the USACE was for vessel compliance with USCG regulations. Crosby did not comply.

2) The government supervised and controlled the implementation of those specifications and the work conformed to the specifications. Is Crosby suggesting that the USACE needed to put a guard on the Crosby vessels to make sure Crosby complied with the USCG regulations?; and

3) The contractor was not aware of reasons not known to the government that would make the implementation of the specifications unsafe or unreasonable. Certainly, Crosby was

6

aware of the need to comply with USCG regulations. Additionally, compliance with the USCG rules would **NOT** make anything unsafe r unreasonable.

Movers rely heavily, if not exclusively, on a defective Affidavit they initially prepared and had executed by Stephen Hinkamp, an engineer with the USACE.[17] That affidavit basically says:

1) BIS used Crosby interests during the project (item 9);
2) The use of vessels was required for the project (item 10);
3) That the plans and specifications provided details concerning vessel use including access routes, and safety equipment (item 11);
4) Certain dangers were known, and measures were taken (items 13 and 14).

**What the affidavit does not say:**

1) The government knew the Crosby interests would operate their vessels without the lights required by law and regulation;
2) That the specifications for the project contemplated improper mooring of a Crosby vessel so as to be a hazard to navigation;
3) That the Crosby vessels coincidently lose connections to critical equipment they were required to have and maintain at all times;
4) That the safety measures included in the specifications addressed the absence of and intentional refusal of the Crosby interests to use the lights mandated by Coast Guard regulations, etc.

---

[17] Exhibit 4 to movers' Memorandum.

5) That the government (USACE) mandated the Crosby vessels to violate USCG, and other, regulations regarding running lights, proper mooring, not creating a hazard to navigation, etc.

6) That the affiant is qualified to make statements such as the Crosby vessels "… were in conformity with these plans and specifications [vessel routes and safety measures] (item 11).

   a. Any alleged qualifications of Mr. Hinkamp about vessel operations, mooring, running lights, inoperable equipment is absent whether by intent or otherwise.

   b. Whether Mr. Hinkamp has any knowledge whatsoever of what transpired before and that time of this catastrophe;

   c. Why he refused to testify that the path taken by the Crosby vessel on the night of this catastrophe were in conformity with the specifications (item 11 in movers Exhibit 1). Most likely because he does not possess that information;

   d. That the Crosby vessel was in conformity with the plans and specifications (item 12 in movers Exhibit 1). Most likely because he does not have any knowledge concerning those subjects;

   e. That the government knew that the Crosby vessel would refuse to utilize the lights required by law and would improperly moor its vessel so as create a hazard to navigation.

Your honor addressed these same types of arguments in *Homelight* and rejected them (Rec. doc 76, page 8).

4850-5972-9349, v. 1

## **GRANTING THE MOTION WILL PREJUDICE THE CLAIMANTS**

Notwithstanding the self-serving yet inaccurate claim by Crosby insurers that the claimants will not be prejudiced, they will indeed be prejudiced. Crosby would have the Court believe that granting its motion would only require one (1) additional deposition, *i.e.* the deposition of Mr. Hinkamp. In reality it would also require the depositions of the USACE, the depositions of most, if not all, of those that drafted the specifications and a demand for the production of all documents, drafts, meeting minutes, notes, etc. surrounding the specifications. To accomplish all of that would result in the movers asking for a continuance of the trial date, which is suspected to be the real reason behind this pending motion.

Granting the motion would also require claimants' experts to now address the new claims of Crosby/insurers and supplement their expert reports.[18] This cannot be done until a host of unplanned depositions ae completed. This too will result in Crosby/insurers seeking an extension to provide their own expert reports and seek a continuance of this trial.

**THE REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY**

**SIGNATURE BOX ON NEXT PAGE**

---

[18] It is noteworthy that Crosby insurers waited until after they received the claimants' expert reports to seek to stay the case because criminal charges were still pending against Chad Williams, the operator of the pleasure boat involved in this matter. As a result, claimants still have not received expert reports from Crosby/insurers.

9

Respectfully Submitted,

**THE CHOPIN LAW FIRM LLC**

__/s/ *Richard A. Chopin*_____
**RICHARD A. CHOPIN (4088)**
**JUSTIN M. CHOPIN (31100)**
650 Poydras Street, Suite 1550
New Orleans, Louisiana 70130
Telephone:    Dick: 504-229-6682
              Justin: 504-229-6681
Facsimile:    504-324-0640
Email:        Rchopin@ChopinLawFirm.com
              Justin@ChopinLawFirm.com
*Attorneys for Claimants, Kathy Randle, and Anna Clark*