UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF CROSBY MARINE TRANSPORTATION, L.L.C., *et al*. | CIVIL ACTION |
| | NO. 17-14023 c/w 18-4136 |
| | SECTION M (4)<br>*Pertains to all cases* |

**ORDER & REASONS**

Before the Court are three motions for partial summary judgment filed by Crosby Marine Transportation, LLC, Crosby Tugs, LLC, the *M/V Delta Duck*, Bertucci Contracting Company, LLC, the Barge BBL 708, Crosby Dredging, LLC, the Dredge 7 and Dredge 8, Chris Carter, and Derek Hebert (collectively, "Crosby,"), jointly with Atlantic Specialty Insurance Company, Markel American Insurance Company, State National Insurance Company, Navigators Insurance Company, United States Fire Insurance Company, Mitsui Sumitomo Insurance Company of America, Swiss Re International SE, and the following Certain Underwriters at Lloyds Syndicates: 1206 ATL, 1897 SKD, 1183 TAL, 2007 NVA, 0382 HDU, 1274 AUL, 0510 KLN, 1861 ATL, 1967 WRB, 0780 ADV, 1225 AES, 0033 HIS (collectively, "Underwriters," and together with Crosby, the "Crosby interests").[1] Claimants Kathy Randle and Anna Clark respond in opposition,[2] and the Crosby interests reply in further support of their motions.[3]

[1] R. Docs. 339, 340 & 341.
[2] R. Docs. 359, 360 & 361.
[3] R. Docs. 368 & 374.

Also, before the Court is a motion for partial summary judgment filed by Claude Toups seeking dismissal of the negligent entrustment claims made against him.[4] The Crosby interests respond in opposition,[5] and Toups replies in further support of his motion.[6]

Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I. BACKGROUND

This matter concerns a maritime collision. The accident occurred on November 19, 2017, when a recreational boat hit Crosby's vessel and tow,[7] which was pushed up against the bank and blocking a portion of Bayou Segnette.[8] At the time of the accident, Crosby's vessel was working on a United States Army Corps of Engineers ("USACE") project.[9]

In March 2017, the USACE awarded a contract to BIS Services, LLC, for a hurricane restoration project in Jefferson Parish known as the Yankee Pond Project, which involved moving sediment and other materials from Lake Cataouatche through the Bayou Segnette waterway and depositing the materials in Yankee Pond to build up the marsh.[10] BIS Services subcontracted with Crosby Dredging for dredging services on the project, and Crosby Dredging, in turn, subcontracted with Crosby Tugs for tug operations on the project.[11] Crosby Dredging employed two of its own dredges – Dredge 7, located in Yankee Pond, and Dredge 8, in Lake Cataouatche.[12] In September 2017, Crosby captain Chris Carter began working on the Yankee Pond Project and was assigned

[4] R. Doc. 345.
[5] R. Doc. 362.
[6] R. Doc. 372.
[7] R. Doc. 315-1 at 5.
[8] *Id.*
[9] R. Doc. 309 at 2.
[10] R. Doc. 315-1 at 2.
[11] *Id.*
[12] *Id.*

to the *Delta Duck*, an inland pushboat used to push barges through Bayou Segnette between Dredge 7 and Dredge 8.[13]

On the evening of November 18, 2017, Carter received clearance to push Bertucci Barge 708 from Dredge 7 to Dredge 8.[14] Earlier that evening, Carter learned of an approaching cold front that would change the winds from a southerly direction to a strong northerly direction.[15] Despite advance warning of the imminent front, he decided to proceed toward Lake Cataouatche through Bayou Segnette.[16] While en route, Carter decided to push the tow against the west bank of Bayou Segnette due to increased wind speeds and changing weather conditions.[17] At midnight, the *Delta Duck*'s watch changed, and mate Derek Hebert assumed the helm of the tug.[18] When Hebert came on watch, the head of Barge 708 was nosed up against the bank and the stern of the tug was 90 feet from the bank, thereby blocking about 35% of Bayou Segnette.[19] For the entire time Barge 708 was thus situated, neither the *Delta Duck* nor the barge displayed red and green navigational lights, and the barge displayed no white all-around light.[20] However, the *Delta Duck* used its work lights to light up the tug and the deck barge.[21]

On the morning of November 19, 2017, at approximately 4:00 a.m., a 22-foot Fishmaster recreational vessel, piloted by Chad Williams, headed south along Bayou Segnette.[22] The Crosby interests maintain that Williams, who had spent the night and early morning hours drinking alcohol, was impaired at the time of the accident.[23] Williams's father-in-law, Claude Toups,

---

[13] *Id.* at 3.
[14] *Id.* at 4.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 4.
[18] *Id.* at 5.
[19] *Id.*
[20] *Id.*
[21] R. Doc. 324-1 at 4 (citing R. Doc. 324-2 at 27).
[22] R. Doc. 315-1 at 5.
[23] R. Doc. 340-1 at 3 (citing R. Doc. 340-6 at 4-5).

owned the boat and allowed Williams unfettered access to it.[24] Angela Huggins, Anna Clark, and Samantha Randle were passengers in the boat.[25] As the boat approached the intersection of Bayou Segnette and Tar Paper Canal, it struck Bertucci Barge 708, which was still pushed up against the west bank of Bayou Segnette.[26] Huggins and Clark suffered severe injuries, and Randle was killed.[27] Huggins, Clark, and Williams all lost consciousness as a result of the accident.[28] Samantha Randle's body was not discovered until sometime later.[29] Her cause of death was determined to be blunt force trauma of the head combined with drowning.[30]

Crosby Tugs and Bertucci Contracting filed this limitation-of-liability proceeding in December 2017.[31] Kathy Randle, the mother of decedent Samantha Randle, and Clark both filed claims in the case.[32] Kathy Randle brought wrongful death and survival action claims. Clark seeks redress for her injuries, including lost wages. Both Kathy Randle and Clark seek punitive damages from Crosby Marine, Crosby Tugs, Bertucci, Carter, Hebert, and Williams.[33] The Crosby interests filed the instant motions for partial summary judgment seeking dismissal of some of Kathy Randle's wrongful death and survival damages claims, a portion of Clark's lost wages claim, and both claimants' punitive damages claims.[34]

---

[24] R. Doc. 345-2 at 1-2.
[25] R. Doc. 315-1 at 5.
[26] *Id.*
[27] *Id.* at 6.
[28] R. Doc. 339-1 at 4-8 (citing R. Docs. 339-4; 339-5; 339-6; 339-7).
[29] *Id.* at 3.
[30] R. Doc. 361-1 at 1.
[31] R. Doc. 1.
[32] R. Doc. 8.
[33] *Id.* at 12.
[34] R. Docs. 339, 340 & 341.

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Kathy Randle's Wrongful Death and Survival Damages Claims (R. Doc. 339)**

The Crosby interests seek summary judgment on Kathy Randle's wrongful death damages claims for loss of support and loss of services because she testified at her deposition that her

daughter Samantha did not provide her with financial support or regular household services.[35] The Crosby interests also argue that Kathy Randle cannot recover survival action damages for Samantha's post-collision conscious pain and suffering because there is no evidence that Samantha was conscious after the accident.[36]

Kathy Randle concedes that Samantha did not support her financially or provide her with any household services.[37] She argues, however, that loss of services should include companionship and she should be able to maintain that claim because Samantha "had her back" if she needed anything.[38] Kathy Randle further argues that the Crosby interests did not meet their summary-judgment burden of proving Samantha did not experience post-collision conscious pain and suffering because the coroner's report listed drowning as a cause of death, meaning Samantha must have been alive when she entered the water.[39]

State-law remedies apply to supplement the general maritime law in actions for wrongful deaths and personal injuries to non-seafarers that occur in territorial waters. *Van Horn v. Chubb Ins. Co.*, 2018 WL 1604994, at *2-3 (E.D. La. Apr. 3, 2018) (reviewing authorities). The wrongful death action and the survival action are separate and distinct actions that arise from a common tort. *Taylor v. Giddens*, 618 So. 2d 834, 840 (La. 1993). The wrongful death action compensates the decedent's "beneficiaries for their own injuries suffered as a result of the victim's death." *Walls v. Am. Optical Corp.*, 740 So. 2d 1262, 1269-70 (La. 1999). Damages recoverable for wrongful death include loss of love, affection, companionship, services, and support, as well as medical and funeral expenses. *Hancock v. Higman Barge Lines, Inc.*, 2017 WL 3582433, at *4 (E.D. La. Aug.

---

[35] R. Doc. 339-1 at 3-4.
[36] *Id.* at 4-8.
[37] R. Doc. 361 at 1.
[38] *Id.* at 1-2.
[39] *Id.* at 2.

18, 2017). Recovering for loss of household services as an item of special damages requires proof of an actual pecuniary loss. *Warren v. Sabine Towing & Transp. Co.*, 831 So. 2d 517, 537 (La. App. 2002).

Kathy Randle concedes that she has not suffered any pecuniary loss with respect to loss of support or services as a result of Samantha's death. Further, loss of services and loss of companionship are separate items of wrongful death damages, and Kathy Randle's claim for loss of companionship is not at issue in this motion. Because Kathy Randle concedes that Samantha neither supported her nor provided her with specific household services, her wrongful death damages claims for loss of support and loss of services must be dismissed.

The survival action, on the other hand, provides recovery "for the damages suffered by the victim from the time of injury to the moment of death." *Taylor*, 618 So. 2d at 840. "The survival action comes into existence simultaneously with the existence of the tort and is transmitted to [certain designated] beneficiaries upon the victim's death." *Id.* The damages recoverable for the survival action include conscious pain and suffering, loss of earnings, and other damages sustained by the victim from the time of the injury up to the moment of death. *Broussard v. Med. Protective Co.*, 952 So. 2d 813, 818 (La. App. 2007). Survivors cannot recover pain and suffering damages if there is no evidence that the decedent consciously suffered any pre-death pain. *Siemann v. Teston*, 517 So. 2d 242, 249 (La. App. 1987) (collecting cases).

Here, the Crosby interests posit that Samantha could not have suffered any conscious pre-death pain because she died from blunt force trauma to the head and all the other passengers on the fishing boat were knocked unconscious by the collision's impact. Although Kathy Randle argues that Samantha must have been alive when she entered the water because she drowned, there is no evidence that Samantha was conscious when that occurred. The Crosby interests have met

their burden on summary judgment of showing a lack of evidence of Samantha's conscious pain and suffering and Kathy Randle has not produced any evidence demonstrating that Samantha in fact consciously suffered. Because of the lack of evidence, the Crosby interests are entitled to partial summary judgment dismissing Kathy Randle's survival damages claim for pain and suffering.

**C. The Claimants' Punitive Damages Claim (R. Doc. 340)**

The Crosby interests seek partial summary judgment dismissing Kathy Randle's and Clark's punitive damages claims against them and declaring that they cannot be held jointly and severally liable with Williams for any punitive damages awarded against him.[40] They argue that there is no evidence that they acted in such an egregious manner – a case of "enormity" – as to justify punitive damages, in part, because of the relative culpability of Williams and Crosby and because the agencies that investigated the accident exonerated them from liability.[41] They also argue that punitive damages are a personal obligation for which there can be no joint and several liability.[42]

In opposition, Kathy Randle and Clark argue that Crosby's conduct was "outrageous, gross, willful, wanton [and] intentional" and whether the Crosby interests are liable for punitive damages is an issue of fact that must be determined by the jury at trial.[43] They also argue that the outcome of the agency investigations into the accident is inadmissible and irrelevant to the issue of punitive damages.[44] Finally, claimants argue, without citing any authority, that punitive damages might be

[40] R. Doc. 340.

[41] R. Docs. 340-1 at 2-10; 374 at 2-3. Williams entered an *Alford* guilty plea to a charge of negligent homicide. R. Doc. 340-1 at 4.

[42] R. Docs. 340-1 at 10-11; 374 at 3-4.

[43] R. Doc. 360 at 3.

[44] *Id.* at 2.

subject to joint and several liability under the general maritime law, even if not under Louisiana law.[45]

Here, claimants' punitive damages claims arise under the general maritime law.[46] Under the general maritime law, punitive damages may be available if the plaintiff proves that the defendant's "behavior … is more than merely negligent," but rather was so egregious as to constitute gross negligence, reckless or callous disregard for the rights of others, or actual malice or criminal indifference. *Maritrans Operating Partners v. Diana T*, 1999 WL 144458, at *7 (E.D. La. Mar. 15, 1999) (citing *In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir. 1972)). "The theory of a punitive damage award is that the defendant has committed the civil equivalent of a crime." 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5:10 (6th ed. 2020). "Punitive damages are awarded both to punish the particular defendant and to deter similar conduct by others." *Id.* Both the Crosby interests and claimants look to the standard for punitive damages articulated in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) (the *Exxon Valdez* case): punitive damages are limited to cases of "enormity," that is, where a defendant's conduct is outrageous, owing to gross negligence, willful, wanton, and reckless indifference for others' rights, or even more deplorable conduct. *Id.* at 492-93. Such damages are aimed at retribution and deterring harmful conduct. *Id.* at 492. The conduct warranting the imposition of punitive damages in *Exxon Shipping* included Exxon's failure to monitor its captain once he returned to duty after dropping out of the prescribed course of treatment for his alcoholism and backsliding into his former drinking habits, all of which was known to Exxon; the captain's inexplicable abandonment of his

[45] *Id.* at 3 ("Louisiana law is vastly different.")

[46] Even were state law to apply, Louisiana has a general public policy prohibiting punitive damages, unless expressly authorized by statute, and claimants have not identified any Louisiana statute or Civil Code article upon which to base a punitive damages claim against the Crosby interests. *Hancock*, 2017 WL 3582433, at *4 (citing *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002), and La. Civ. Code arts. 2315.3, 2315.4, 2315.7, 2315.8).

post on the bridge of the 900-foot oil tanker two minutes before a critical turn to avoid a reef, even though he was the only person onboard the ship licensed to navigate this part of the Prince William Sound; and the captain's excessive blood-alcohol level in the wake of the grounding and 11-million gallon oil spill. *Id*. at 476-80.

In the case at bar, the claimants present insufficient evidence in support of their punitive damages claims against Crosby – in fact, none apart from that offered to support Crosby's liability for negligence. In their little more than two pages of opposition to Crosby's motion, claimants point to no statement from an affidavit or deposition, or any other summary-judgment evidence, from which a reasonable factfinder could conclude that Crosby acted with gross negligence, willful, wanton, and reckless disregard for the rights of others, actual malice or criminal indifference, or even more deplorable conduct. *See Garcia v. Carnival Corp.*, 2014 WL 12531509, at * 2-3 (S.D. Fla. Apr. 10, 2014) (granting summary judgment dismissing plaintiff's punitive damages claim due to lack of sufficient evidence to support an entitlement to same). Even if Crosby is found to be negligent for having violated navigation rules, the accident prevention plan, and safety rules, there is no evidence that its actions amounted to the civil equivalent of a crime or the kind of reprehensible culpability involved in *Exxon Shipping*. For example, there is no evidence that Crosby engaged in a pattern of such violations as would demonstrate a callous disregard for others' rights. Nor is there evidence of Crosby's having earlier near-miss encounters with other boats in Bayou Segnette or being warned of the possibility of the exact type of collision that occurred, either of which would have placed Crosby on notice of the risks of its actions in this case. In short, this case does not involve the "enormity" of offensive conduct the law requires to warrant punitive damages. Further, to hold out the prospect of punitive damages in a case such as this would risk transforming every garden-variety general-maritime-law negligence case involving

a vessel collision into a punitive damages case. *Exxon Shipping* is not nearly so broad. Therefore, the Crosby interests are entitled to partial summary judgment dismissing the claimants' punitive damages claims against them.

Moreover, the Crosby interests cannot be held jointly and severally liable with Williams for any punitive damages awarded against him. Punitive damages are meant to punish a person or entity and are thus personal obligations awarded against the responsible individual. *See Hannan v. Waterman S.S. Co.*, 1991 WL 88009, at *2 (E.D. La. May 22, 1991) ("An obligation to pay punitive damages is a personal obligation which is intended to penalize a defendant for its intentional or wanton conduct. There is no joint and several liability for an injury which supports a punitive damage award."). Claimants have cited no law to the contrary. Further, under the general maritime law, joint tortfeasors' joint and several liability to a plaintiff is established through principles of comparative or proportionate fault. *Pilette v. United Marine Offshore LLC*, 447 F. Supp. 3d 517, 520 (W.D. La. 2020) (citing *Shell Offshore, Inc. v. Tesla Offshore, LLC*, 2017 WL 1108351, at *3 (E.D. La. Mar. 24, 2017)). It follows, then, that a defendant that is not liable for a particular kind of damages cannot be jointly and severally liable for another defendant's obligation for such damages. *Id.* (citing *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1434 (5th Cir. 1988)). This seems especially true as to punitive damages. Accordingly, if Williams is liable for punitive damages, the Crosby interests cannot be held to be jointly and severally liable for his obligation.

**D. Clark's Lost Wages Claims (R. Doc. 341)**

The Crosby interests seek partial summary judgment dismissing Clark's claim for past lost wages occurring after March 1, 2018, and future lost wages.[47] They point out that Clark's treating

[47] R. Doc. 341-1 at 1-2.

physician cleared her to return to work on March 1, 2018, and she has worked full-time ever since, even receiving a promotion and pay increase.[48] Clark's witness list does not include any vocational rehabilitation expert or economist to testify at trial in support of her lost wage claim.[49]

In opposition, Clark argues that she was out of work from the date of the accident, November 19, 2017, to March 1, 2018, and should be able to collect past lost wages for that period.[50] While Clark concedes that she has returned to her pre-accident employment, she argues that she could require future treatment for lingering injuries that could potentially put her out of work in the future, and thus, her future lost wages claim should not be dismissed.[51]

Past lost wages "are the monetary losses plaintiff experienced during the interval between the date of the accident ... and the time of trial." *Folse v. Fakouri*, 371 So. 2d 1120, 1122 (La. 1979). "[T]o be awarded lost wages, a plaintiff must prove positively that [s]he would have been earning the wages but for the accident in question." *Boyette v. United Servs. Auto. Ass'n*, 783 So. 2d 1276, 1279 (La. 2001) (collecting cases). The plaintiff must prove "the duration of time missed from work due to the accident." *Brown v. City of Madisonville*, 5 So. 3d 874, 887 (La. App. 2008). The plaintiff is entitled to past wages only until the time she could have resumed earning wages. *Dalrymple v. U.S. Postal Serv.*, 2021 WL 926721, at *11 (E.D. La. Mar. 11, 2021). "To obtain an award for future lost wages or earning capacity, a plaintiff must present medical evidence indicating with reasonable certainty that there exists a residual disability causally related to the accident." *Purvis v. Jefferson Par. Hosp. Serv.*, 209 So. 3d 363, 378 (La. App. 2016).

Here, Clark was undisputedly out of work from the date of the accident, November 19, 2017, to March 1, 2018. The Crosby interests do not contest her past lost wage claim for this

---

[48] *Id.* at 3-9.
[49] *Id.* at 4.
[50] R. Doc. 359 at 1.
[51] *Id.* at 2.

period. Rather, they argue that she is not entitled to past lost wages from the date she returned to work, or to any future lost wages. Clark has presented no evidence to support any lost wage claim, past or future, after the date she returned to work. Thus, the Crosby interests' motion is granted as to dismissing Clark's post-March 1, 2018, past and future lost wage claims.

**E. The Negligent Entrustment Claim Against Toups (R. Doc. 345)**

Toups argues that the negligent entrustment claim against him should be dismissed because he believed Williams to be a skilled boat operator and could not have known that he would operate the vessel while intoxicated.[52] In opposition, the Crosby interests argue that Toups was aware of Williams' informal training in vessel operation and Toups testified at his deposition that he was previously on the boat with Williams when Williams was consuming alcohol, and thus there are issues of material fact that preclude summary judgment on the negligent entrustment claim.[53] In his reply memorandum, Toups claims he did not testify that he saw Williams consume alcohol while operating the boat, but rather that Williams had a couple of beers while fishing on the boat.[54] Toups also argues that Williams was an experienced and well-trained boat operator.[55]

A claim for negligent entrustment in the maritime context requires evidence "that the boat owner knew or should have known that the person to whom the boat was entrusted ... was likely to use it in a dangerous manner." *In re TK Boat Rentals, LLC*, 2018 WL 3997300, at *6 (E.D. La. Aug. 21, 2018) (quoting *Regan v. Starcraft Marine LLC*, 719 F. Supp. 2d 690, 696 n.9 (W.D. La. 2010)); *see also Joyce v. Joyce*, 975 F.2d 379, 385 (7th Cir. 1992) ("[T]he essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the

[52] R. Doc. 362-1 at 7-9.
[53] R. Doc. 362 at 5-9.
[54] R. Doc. 372 at 2-7.
[55] *Id.* at 5-7.

boat safely.”). The record on this motion for partial summary judgment demonstrates that there are disputed issues of material fact regarding whether Toups negligently entrusted the vessel to Williams. Thus, Toups’s motion must be denied.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Crosby interests’ motion for partial summary judgment on Kathy Randle’s wrongful death damages for loss of support and loss of services and survival damages for Samantha Randle’s post-collision conscious pain and suffering (R. Doc. 339) is GRANTED, and those damages claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Crosby interests’ motion for partial summary judgment on punitive damages (R. Doc. 340) is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Crosby interests’ motion for partial summary judgment on Clark’s post-March 1, 2018, past and future lost wages claim (R. Doc. 341) is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Toups’s motion for partial summary judgment on negligent entrustment (R. Doc. 345) is DENIED.

New Orleans, Louisiana, this 13th day of May, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE